AO 106 (REV 4/10) Affidavit for Search Warrant                    AUSA Vikas Didwania, (312) 353-8898

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:               Case Number: 21 M 137

Information Stored at Premises Controlled by Google
Inc., as further described in Attachment A

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, William Fuentes, a Task Force Officer of the Federal Bureau of Investigations, request a search warrant
and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A-I

located in the Northern District of California, there is now concealed:

### See Attachment A-III

The basis for the search under Fed. R. Crim. P. 41(c) is evidence.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2119 | armed motor vehicle theft |
| Title 18, United States Code, Sections 371 and 2119 | conspiracy to commit armed motor vehicle theft |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

FILED

MAR 05 2021

MAGISTRATE JUDGE
SUNIL R. HARJANI

_____
Applicant's Signature

William Fuentes, Task Force Officer, FBI
Printed name and title

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent
provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: March 5, 2021                           _____
                                              Judge's signature

City and State: Chicago, Illinois            SUNIL R. HARJANI, U.S. Magistrate Judge
                                              Printed name and title

UNITED STATES DISTRICT COURT    )
    )
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, William Fuentes, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    This affidavit is in support of an application for a search warrant for information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Attachment A.

2.    As described in more detail below, law enforcement is investigating a series of motor vehicle thefts that occurred between December 7, 2020 and January 23, 2021 that appear to be linked and coordinated. This affidavit is in support of an application for a search warrant to obtain certain location information from Google. The government is only seeking location information for the incidents that occurred on December 7, 2020 and January 23, 2021. As described below, the government already has obtained a warrant for location information from Google for the incidents that occurred on January 14, January 15, and January 16, 2021. As detailed below,

1

Google collects location information from devices using Google's operating system or Google applications. To help identify suspects who may have committed the motor vehicle thefts, this search warrants seeks anonymized data for devices that were at the incidents. Law enforcement will then determine which, if any, of the devices were in at least two of the incident locations. For the identified devices, law enforcement will ask Google to produce identifying information, such as subscriber information, which will help identify the individual associated with the device.

3.     I am a Detective with the Addison Police Department who is assigned as a Task Force Officer to the Federal Bureau of Investigation ("FBI"). I have been employed by the Addison Police Department since April 2013 and assigned to the FBI since May of 2019. I am currently assigned to the FBI's West Resident Agency and am a member of the Safe Streets Task Force. My responsibilities include the investigation of violent crimes, including armed motor vehicle thefts, and the apprehension of violent fugitives. I have participated in over 100 felony investigations, including several involving motor vehicle thefts, and have participated in the execution of numerous state and federal search warrants, including for cellular-tower information.

4.     I have participated in at least 10 investigations involving motor vehicle thefts and at least 50 investigations involving conduct by co-conspirators more generally. In my training and experience, I have found involved individuals to send and receive text messages, and exchange phone calls to coordinate activity with other involved individuals before, during, or after the commission of these offenses.

Additionally, leading up to or during a crime, involved individuals will access the Internet, such as maps applications, social media applications, including, for example, streaming the commission of the crime on the Internet, or other applications installed on the mobile device which requires data transactions to occur. In my training and experience, investigative activity involving cellular phones has frequently resulted in identifying suspects or identifying evidence of the criminal offense. For example, I am aware that law enforcement has successfully used cellular tower information to identify suspects in bank robbery investigations because one or more suspects was carrying a cell phone during the robbery. Also, I have made numerous arrests over the course of my career, and almost every time the arrestee had a cell phone on his person, including when the arrest occurred outside the home.

5.      Because this affidavit is submitted to establish probable cause for a search warrant, it does not set forth all of my knowledge about this matter.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause (a) to believe that unidentified individuals have committed armed motor vehicle thefts, in violation of 18 U.S.C. § 2119, and conspired to commit armed motor vehicle thefts, in violation of 18 U.S.C. §§ 371 and 2119 (the **"Subject Offenses"**) and (b) to search the information described in Attachment A(I) for evidence of these crimes, further described in Attachment A(III).

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the

Court is a magistrate judge of "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

8.    Based on my training and experience, I know that cellular devices, such as mobile telephones, are wireless devices that enable their users to send and receive wire and electronic communications using the networks provided by cellular service providers. In order to send or receive communications, cellular devices connect to radio antennas that are part of the cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

9.    Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("wi-fi") access points if a user enables wi-fi connectivity. Wi-fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

4

10.    Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

11.    Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by applications installed on a device as part of the application's operation.

12.    Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

13.    In addition, based on my training and experience, I know that Google offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and YouTube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as Gmail, online file storage, and

messaging, require the user to sign in to the service using their Google account. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address. Other services, such as Google Maps and YouTube, can be used while signed in to a Google account, although some aspects of these services can be used even without being signed in to a Google account.

14.    In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

15.    Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via applications offered by Google that have been downloaded onto the device. Google applications exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

16.    Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to

6

determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about wi-fi access points and Bluetooth beacons within range of the mobile device.

17.     Based on my training and experience, I also know that Google collects and retains information about the user's location if the user has enabled Google to track web and application activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and application-based activity and associates this information with the Google account associated with the Android device or that is signed in with the relevant Google app.

18.     Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine with which Google account(s) those devices are associated. Among other

7

things, this information can inculpate or exculpate a Google account holder by showing that the individual was, or was not, near a given location at a time relevant to the criminal investigation.

19.     Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, the information often provide clues to their identity, location, or illicit activities.

20.     Based on my training and experience, I also know that Google typically retains, and can provide, certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated

8

with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## PROBABLE CAUSE

*Armed Motor Vehicle Thefts Between December 7, 2020 and January 23, 2021*

21.     According to South Holland Police Department reports, on December 7, 2020, at approximately 5:56 p.m., according to Victim 5, he/she was in the passenger seat of a grey 2008 Audi Q7, which was parked in front of Ill State Kustoms, an auto repair shop located at 27 E. Sibley Blvd., South Holland, IL (**"Target Location 1"**). An unknown male entered the Audi from the driver's side with a gun in his hand. He put the gun into Victim 5's ribs and demanded he/she exit the Audi. Victim 5 immediately exited and the unknown male fled in the Audi. According to police reports, video surveillance showed the unknown male arrived in a dark colored sedan, and both the Audi and the sedan fled after the theft. I believe this motor vehicle theft is connected to the other thefts identified next because DNA recovered from the Audi matched DNA recovered from the Ford Escape stolen on January 16, 2021, as described below.

22.     According to Hazel Crest Police Department reports, on January 14, 2021, between 2:30 p.m. and 2:36 p.m., according to Victim 1, an unknown male exited a black SUV and approached Victim 1 near a driveway on the 1700 West block of 168th St. in Hazel Crest, IL. The unknown male removed a firearm from his hooded sweatshirt and displayed a small gun at Victim 1. He stated, "give me the keys," and

9

Victim 1 gave the keys to a black 2008 Mercedes-Benz. Both the black SUV the unknown male had arrived in and the 2008 Mercedes-Benz fled the area eastbound towards Park Avenue.

23.     According to surveillance video and Chicago Police Department reports, on January 15, 2021, at approximately 12:50 p.m., Victim 2 described two unknown males who approached Victim 2 in the area of 210 W. 79th St, Chicago, IL. Based on publicly available information from the Public Building Commission of Chicago, the building at this location is a CTA bus garage. According to the police reports, the unknown males stated, "give up the keys to your car." Victim 2 dropped the keys to a grey 2014 Dodge Charger on the ground and began running away. One of the unknown subjects fired a gun in the direction of Victim 2, did not hit the victim, but struck two vehicles in the parking lot. According to surveillance video, the two unknown males entered the 2014 Dodge Charger and fled the area. A third unknown individual drove away in the silver vehicle. According to police reports, Victim 2 described the two unknown males as being approximately 16-18 years old.

24.     According to Dekalb County Sheriff's Office reports, on January 16, 2021, at approximately 3:18 p.m., at least three unknown individuals, driving the same stolen grey Dodge Charger described above and the same stolen black Mercedes-Benz described above arrived in the area of East County Line Road and Barber Greene Road, Cortland Township, IL.[1] As described by law enforcement who

---

[1] These were the same cars as those involved in the January 14 and January 15 incidents because the Vehicle Identification Numbers (VINs) and license plate numbers of the cars match. VINs and license plate numbers are unique to a car.

subsequently arrived on the scene, the Mercedes-Benz and Dodge appear to have been involved in a car crash with each other. The Mercedes-Benz had front-end damage and the Dodge Charger had rear-end damage. Victim 3 stated that he/she observed the crashed vehicles and pulled over in a black Ford Escape to assist. Three unknown males exited the Mercedes-Benz, and one of the individuals pointed a firearm at Victim 3. One of the individuals told Victim 3 to get out of the Ford Escape. The victim was able to exit the Ford Escape, and the three unknown males stole the Ford Escape and fled the area. Law enforcement was able to locate the Ford Escape and briefly engaged in a high-speed chase with the vehicle but subsequently abandoned the chase. Law enforcement recovered the stolen grey Dodge Charger and black Mercedes-Benz at the scene.

    25.    According to Aurora Police Department reports, on January 16, 2021, at approximately 4 p.m., the same stolen black Ford Escape described above was used to commit an armed vehicle theft at the Wendy's restaurant located at 1260 N. Orchard Road, Aurora, IL.[2] According to Victim 4, the victim was parked in the Wendy's parking lot and seated in a red 2015 Hyundai Santa Fe. Victim 4 was approached by two or three unknown individuals, one of whom stated, "Don't fight it." One of these unknown individuals shot Victim 4 in the back, and Victim 4 remains paralyzed from the incident. The unknown individuals stole the red Hyundai Santa Fe and fled the area. Law enforcement recovered the black Ford Escape in the

---

[2] The Ford Escape's VIN and license plate number match the one stolen earlier that day.

11

parking lot. As described above, DNA recovered from the Ford Escape matched the DNA recovered from the Audi stolen on December 7, 2020.

26.    Recovered video surveillance shows that on January 16, 2021, at approximately 5:06 p.m., the Hyundai drove southbound on Vine Ave and parked just south of E 156th Street. Four individuals exited the Hyundai and walked away together from the vehicle eastbound on E. 156th Street. On January 20, 2021, at approximately 9:08 a.m. law enforcement recovered the red Hyundai Santa Fe at the intersection of E. 156th Street and Vine Avenue in Harvey, IL, where it had been abandoned.[3]

27.    I believe D.F. and Troy Pierson may have been involved with the Aurora armed motor vehicle theft for the following reasons:

a.    On January 26, 2021, Aurora Police Department received an anonymous tip. The tipster identified a "D.F., Jr."[4] as being involved in the motor vehicle theft that occurred on January 16, 2021. The tipster did not provide additional details about the bragging or the tipster's relationship with D.F. The tipster provided an address for D.F. on Burnham Ave., in Lansing. Law enforcement databases identify this same address as D.F's residence.

b.    On January 27, 2021, the Lansing Police Department dispatch center received a call, which was recorded. The caller ("CI-1"), who

---

[3] The Hyundai's VIN and license plate number match the one stolen on January 16, 2021.
[4] Law enforcement has not confirmed whether D.F.'s name contains a suffix but also has not identified any other individual with the name D.F. during this investigation.

wished to remain confidential, stated he/she was as a relative of D.F., Jr.[5] CI-1 reported that D.F., Jr. was involved in several motor vehicle thefts, including the January 16 incident in Aurora. CI-1 noted the Aurora incident resulted in the shooting of a woman at a Wendy's.

      c.    On February 5, 2021, law enforcement conducted an interview of CI-1. According to CI-1, D.F., Jr. told CI-1 that D.F., Jr. and Troy Pierson tried to take "this white bitch's car" in Aurora. Victim 4 is a white female. D.F. further informed CI-1 that during the incident D.F. was punched by the victim, so Pierson shot her. D.F. reflected several times to CI-1, "Man, why this bitch didn't listen?"

      d.    CI-1 provided several facts that were not publicly known but are consistent with the facts known to investigators. First, CI-1 mentioned that D.F. stated he was punched by the victim during the theft. During a subsequent interview, Victim 4 confirmed that she did strike and yell at one of the offenders prior to being shot. Second, CI-1 mentioned that when CI-1 picked up D.F. after the Aurora incident, D.F. was drinking from a wine bottle.

---

[5] CI-1 is not a government source and has not received compensation for the information provided during this investigation. CI-1 has not been promised any benefits for the information provided but was informed that he/she eventually may qualify for a reward under the Crimestoppers program for providing information leading to the arrest of an offender. CI-1 initially informed law enforcement that he/she did not want to be further involved in the investigation, however, CI-1 subsequently has provided additional information to investigators upon request on several occasions. According to currently available records, CI-1 has twenty-six arrests and six convictions, including for felonies. His most recent arrest was in 2014 for traffic offenses and other arrests include for deceptive practice, forgery, and attempted murder. His convictions include for theft, unlawful possession of a weapon by a felon, criminal trespass to land, possession of a controlled substance, and violation of probation/conditional discharge/supervision.

D.F. explained the wine bottle was from the stolen vehicle. During a subsequent interview, Victim 4 confirmed she had a wine bottle inside a bag in her Hyundai Santa Fe.[6]

28.    Based on cellular tower information, which is detailed below, I also believe I.G. was involved with the Aurora armed motor vehicle theft.

29.    According to Hammond Police Department reports, on January 23, 2021, Hammond Police Department officers responded to the area of Star Liquors, 1201 Chicago St., Hammond, IN ("**Target Location 2**") to a robbery which was later reclassified as a vehicular hijacking. Victim 6 walked out of Star Liquors and attempted to enter his/her black Audi A3 vehicle. Victim 6 was approached by two males who both pointed firearms at Victim 6. The two males stated, "give me everything" and Victim 6 told them to take the Audi. Victim 6 exited the Audi, and the two unknown males fled the area southbound in the Audi. Victim 6 described one male individual wearing a black hooded sweatshirt and one male individual wearing a grey hooded sweatshirt. According to the police reports, the incident occurred between 5:30 p.m. and 5:32 p.m.

30.    According to Lansing Police Department reports, on January 23, 2021, at approximately 7:18 p.m., Lansing Police Department officers responded to the area of 177th Street and Torrence Avenue, Lansing, IL ("**Target Location 3**"), due to an accident involving a black Audi A3.[7]    According to Google Maps, a Marathon gas

---

[6] No wine bottles were recovered during a search of the Hyundai Santa Fe.

[7] The Audi's VIN and license plate number match the Audi stolen on January 23, 2021 in Hammond, IN.

station is located at this intersection. Video surveillance from the gas station showed D.F. and T.S. inside the Marathon at approximately 7:13 p.m.[8] The two exited the Marathon and entered a black Audi at approximately 7:15 p.m. Outdoor video surveillance from the Marathon showed an individual wearing a gray hooded sweatshirt, who appears to be I.G., briefly exit the Audi, re-enter the Audi, and close the door. Video surveillance from Sunrise Foods, which is located across 177th Street from the Marathon, showed that at approximately 7:16 p.m. a white vehicle was parked near the Marathon gas station. The black Audi approached the white vehicle, and T.S. and two other individuals exited the Audi. Video surveillance captured gunfire from the three individuals outside the Audi. Surveillance video shows the Audi flee the scene. The Audi got into an accident near Torrence Avenue, which caused the Audi to roll over. An individual, later identified as Troy Pierson, a minor, was found dead near the Audi. According to police reports, witnesses stated they saw four or five individuals running from the Audi.

31.     At approximately 7:25 p.m., surveillance video at Walmart, located at 17625 Torrence Ave., Lansing, IL (**"Target Location 4"**), captured T.S. and I.G., wearing a gray hooded sweatshirt, with B.J., who was injured and inside a shopping cart. According to responding officers, B.J. was suffering from an injury to the right side of his waist. Several persons were taken into custody at the Walmart, including I.G., a minor,[9] who was wearing a grey hooded sweatshirt.

---

[8] Identifications were made by the Lansing Police Department based on comparisons with photos in government databases or comparisons with an individual's appearance post-arrest on January 23, 2021.

[9] I.G. subsequently was released without charges pending further investigation.

32.     The Lansing Police Department detained I.G. and B.J. after locating them in the Walmart.

### *Cellular Tower Information*

33.     On or about February 8, 2021, Magistrate Judge Jeffrey T. Gilbert issued a warrant and order for information identifying the cellular phones connected to the cellular towers covering the incidents from January 14 through January 16, 2021 described above. According to cellular tower information produced by AT&T, only one cellular phone appeared at three different locations at the approximate time of the incidents: the phone with the number 708-XXX-8035. This phone was in the area of the Hazel Crest, IL incident at approximately 2:36 p.m., in the area of the Chicago incident at approximately 12:40 p.m., and in the area of the Aurora incident at approximately 3:58 p.m., all of which are consistent with the approximate times at which the motor vehicle thefts occurred.

34.     I believe this phone number is associated with Subject Phone 1 for the following reasons:

        a.     According to information provided by AT&T, this phone number is associated with a Samsung Galaxy J3 TOP phone model SM-J337AZ smartphone.     Based on comparisons to open source photos available online, Subject Phone 1 also appears to be a model SM-J337AZ smartphone.

        b.     The phone number I.G. provided during booking on January 23, 2021 is the same phone number that appears in the AT&T records.

c.      Facebook records show this phone number is associated with a Facebook profile registered to the same name as I.G. with a display name that is the same name as I.G. and the number 3 appended. Google records show this phone number is associated with the email address that contains the I.G.'s name.

d.      The phone number that appears in the AT&T records is subscribed to Individual A at an address on Lexington Ave. in Harvey, Illinois. During his booking on January 23, 2021, I.G. provided the same address and stated that his step-father's first name was a shortened version of the name on the phone records and provided the same last name.

e.      According to AT&T records, the phone number is associated with a device with IMEI number 352147101524653. Subject Phone 1 has the same IMEI number.[10]

f.      I also believe Subject Phone 1 sent and received communications around the time of the incidents. According to information provided by AT&T, Subject Phone 1 received two text messages at approximately 2:36 p.m. on January 14, 2021. Subject Phone 1 also had outgoing data communications at approximately 12:40 p.m. on January 15, 2021 and at approximately 3:58 p.m. on January 16, 2021.

---

[10] The IMEI number was visible on the back of the phone once the battery was removed.

### *Previous Geofence Warrant*

35.     On or about February 13, 2021, Magistrate Judge Jeffrey T. Gilbert issued a warrant and order for certain location information held by Google for the incidents described above that occurred from January 14 through January 16, 2021. The government served the warrant and order on Google on the same day but has not yet received the requested information from Google.

### *Coordinated Nature of the Thefts*

36.     I believe each of the armed motor vehicle thefts described above may involve the same person or persons because the same vehicles were involved in the incidents, all the incidents occurred within days or weeks of each other, Gonzalez appears to have been present at four or more of the incidents, Frazier and Pierson appear to have been present at two or more of the incidents, a DNA match connected two of the thefts, and the thefts appear to have been coordinated as described next.

37.     I believe the motor vehicle thefts may have been coordinated. One to two days after the January 14 and January 15 thefts, the suspects, spread across the two stolen vehicles, drove both stolen vehicles to the same intersection. This location is not a busy intersection or a commonly visited area; it is next to cornfields and not in a place of high activity. It is unlikely that they were at this intersection at the same time by chance. After arriving at this location and getting into a car crash, the suspects from the two stolen vehicles stole another motor vehicle (the Ford Escape) and they all went into the Ford Escape together. They engaged in a high-speed chase. Together, they arrived at a Wendy's parking lot. They stole another vehicle in the

parking lot (the Hyundai). They all went into the Hyundai together and fled the area together.

38.     I believe the suspects identified above may have used their cell phones to facilitate the offense, including to coordinate their illegal activities. The thefts were spread across several days at different locations and involved multiple vehicles. For example, the vehicles stolen on two different days, January 14 and January 15, met up on January 16 at the same uncommon location at the same time. Similarly, after January 16, the same individuals met up again on January 23 to conduct additional thefts. The suspects also may have used their phones to boast of their illegal activities. For example, Pierson's Facebook account[11] contains a video posted on or about January 20, 2021 that shows an unidentified individual with a gun participating in what appears to be an armed motor vehicle theft.

39.     According to the VIN lookup feature on the website of the National Highway Traffic Safety Administration, the black Audi A3 was manufactured in Gyor, Hungary. The Mercedes-Benz was manufactured in Vance, Alabama. The Dodge Charger was manufactured in Ontario, Canada. The Ford Escape was manufactured in Kansas City, Missouri. The Hyundai Santa Fe was manufactured

---

[11] Pierson's Facebook account, with the display name "Backkdoor InvyKap and UID: 100037770460791, was identified because it contains many photos of Pierson, including several of him holding what appear to be guns. A detective from the Lansing Police Department viewed Pierson's deceased body and identified photos in the Facebook account as depicting Pierson. FBI subsequently identified additional photos in the account based on this information provided by the Lansing Police Department. The account also appears to have stopped account activity on January 23, 2021, which is the day that Pierson died.

in Georgia. The Audi Q7 was manufactured in Slovakia. Therefore, all these vehicles appear to have traveled in interstate and/or foreign commerce prior to the incidents.

40.     Based on my training and experience both professionally and personally, I have observed and learned that most people have and carry cellular phones on them.

41.     Moreover, individuals who commit crimes together often carry cellular phones, and commonly make use of the features on the device before, during, or after the commission of the crime to coordinate their activities. Each of the armed motor vehicle thefts was committed by multiple individuals.

42.     Based on the foregoing, including: (1) evidence that armed motor vehicle thefts occurred, (2) the general "pervasive" and "indispensable" nature of cellphones, *see Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018); and (3) the likelihood that at any given time, a cellphone, regardless of make, is interfacing in some manner with a Google application, service, or platform, I submit that there is probable cause to believe that a search of information in the possession of Google relating to what devices were in the Target Locations described in Attachment A, during the time periods described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, will lead to evidence of the crimes at issue in this case—namely, information pertaining to the identity of the offenders.

43.     According to Google, it collects a phone's location information from a variety of sources, including GPS, IP addresses, sensor data from the device, and nearby devices, such as Wi-Fi access points, cell towers, and Bluetooth-enabled devices. According to Google, the precision of the location information can vary

depending on the circumstances from around twenty meters to up to a few thousand meters.

44.    I also know that Google may not have captured a phone's location information at the exact time or location of the theft. It could have captured the location information prior to or after the theft, which would mean the location information would place the phone near the area of the theft but not at its exact location. The location information also would place the phone at a time close to but not exactly the same as the time of the incident.

45.    As detailed above, the unknown individuals did not stay stationary but moved throughout the location before, during, and after the incidents. Therefore, the phone's location information could place the phone near the area of the incident but not necessarily precisely at the location of the incident.

46.    I determined the target locations described below with the above limitations in mind while also minimizing the size of each target location. I used the following process. Using Google Maps, I put a pin at the location where the motor vehicle theft occurred. I then created a box around the pin by placing pins at each of the four corners around the first pin. A latitude and longitude coordinate were established for each pin on the four corners of the box. I determined the size of the box based on my training and experience, the characteristics of the location, and knowledge from the investigation, specifically:

a.    **Search Parameter 1.** I placed Target Location 1 around the business where the incident occurred due to the limitations identified above and

to minimize the amount of private information collected. I used a timeframe of approximately five minutes on each side of the approximate time of the incident due to the limitations identified above and because the incident may have occurred a few minutes before or after the time of 5:56 p.m.

        b.     **Search Parameter 2.** I placed Target Location 2 around the parking lot, which is approximately where the incident appears to have occurred, due to the limitations identified above and to minimize the amount of private information collected. I used a timeframe of approximately five minutes on each side of the approximate time of the incident due to the limitations identified above and because the incident occurred between approximately 5:30 p.m. and 5:32 p.m.

        c.     **Search Parameter 3.** I placed Target Location 3 around the Marathon gas station, which is approximately where the incident appears to have occurred and individuals from the Audi went inside, and due to the limitations identified above and to minimize the amount of private information collected. Additionally, the parameters were extended to the west because the victim vehicle was parked on the northwest side of the Marathon. It should be noted the parking lot the white Malibu was parked in belonged to an adjacent business to the west which did not appear to be open at the time. I used a timeframe of 7:13 p.m. to 7:20 p.m. because the video surveillance showed the individuals in the Marathon at approximately 7:13 p.m. and video surveillance showed the individuals had fled and were inside the Walmart by 7:25 p.m.

d.      **Search Parameter 4.** I placed Target Location 4 around the front entrance and the parking lot near the front entrance of Walmart due to the individuals walking in through the entrance doors at a known time and due to the limitations identified above and to minimize the amount of private information collected. The parameters had to be extended to the rear of the store in order to obtain GPS coordinates from Google Maps. I used a timeframe of approximately five minutes on each side of the approximate time of 7:25 p.m. when the individuals were observed entering the Walmart. Additionally, toll records for Subject Phone 1, used by I.G., shows incoming and outgoing calls during the period I.G. was inside Walmart.

47.      The latitude and longitude coordinates of the pins at the four corners of each box are listed below in Attachment A(I) under the search parameters (the "Target Locations"). Google will produce the anonymized list of devices located within this box during the time period specified.

48.      In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment A(II):

a.      Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique device ID, timestamp, coordinates, and data source, if available, of the devices

23

that reported their location within the Target Locations described in Attachment A during the time period described in Attachment A.

b.      The government will then review this list to identify devices that appear at two of the Target Locations described in Attachment A during the time period described in Attachment A, *or*, one of the Target Locations and at least one of the target locations identified in the warrant and order issued by Magistrate Judge Jeffrey T. Gilbert on February 13, 2021. The government will inquire about those devices. For Target Location 4, the government will inquire about devices that appear within Target Location 4 and at least two other target locations (either those described in Attachment A below or described in the warrant and order issued by Magistrate Judge Jeffrey T. Gilbert on February 13, 2021).

c.      Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquiries.

## CONCLUSION

49.     Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Section 2119 are located within one or more computers or servers found at Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043. By this affidavit and application, I request that the Court issue a search warrant directed to Google allowing agents to seize the electronic evidence and other information stored on the Google servers following the search procedure described in Attachment A.

FURTHER AFFIANT SAYETH NOT.

William Fuentes
Task Force Officer
FBI

Subscribed and sworn before me
this 5th day of March, 2021

Honorable SUNIL R. HARJANI
United States Magistrate Judge

25

## ATTACHMENT A

### I.  Property to be Searched

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, wi-fi, and Bluetooth, generated from devices and that reported a device location within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google accounts associated with the responsive location history data.

26

## Search Parameters 1

- *Date*: December 7, 2020

- *Time Period (including time zone)*: 5:51 p.m. through 6:01 p.m. (CST).

- *Target Location 1*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

**Point 1:**

> 41°37'21.3"N  87°36'59.1"W
>
> 41.622576, -87.616425

**Point 2:**

> 41°37'19.9"N  87°36'59.1"W
>
> 41.622196, -87.616426

**Point 3:**

> 41°37'19.9"N  87°36'57.3"W
>
> 41.622191, -87.615907

**Point 4:**

> 41°37'21.3"N  87°36'57.3"W
>
> 41.622579, -87.615927



## Search Parameters 2

- *Date*: January 23, 2021

- *Time Period (including time zone)*: 5:25 p.m. to 5:37 p.m. (CST).

- *Target Location 2*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

Point 1:
    41°37'46.0"N  87°29'59.9"W
    41.629442, -87.499983
Point 2:
    41°37'44.6"N  87°29'59.9"W
    41.629068, -87.499963
Point 3:
    41°37'44.6"N  87°29'57.7"W
    41.629066, -87.499367
Point 4:
    41°37'45.8"N  87°29'57.9"W
    41.629379, -87.499405



## Search Parameters 3

- *Date*: January 23, 2021

- *Time Period (including time zone)*: 7:13 p.m. to 7:20 p.m. (CST).

- *Target Location 3*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

  Point 1:
  > 41°34'25.9"N 87°33'34.3"W
  >
  > 41.573849, -87.559518

  Point 2:
  > 41°34'24.5"N 87°33'34.2"W
  >
  > 41.573472, -87.559499

  Point 3:
  > 41°34'24.5"N 87°33'32.5"W
  >
  > 41.573458, -87.559024

  Point 4:
  > 41°34'25.9"N 87°33'32.5"W
  >
  > 41.573847, -87.559037



### Search Parameters 4

- *Date*: January 23, 2021

- *Time Period (including time zone)*: 7:20 p.m. to 7:30 p.m. (CST).

- *Target Location 4*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

    Point 1:
    
        41° 34' 29.244"N 87° 33' 21.9234"W
    
        41.57479, -87.55609
    
    Point 2:
    
        41° 34' 27.4434"N 87° 33' 21.8874"W
    
        41.57429, -87.55608
    
    Point 3:
    
        41° 34' 27.48"N 87° 33' 15.552"W
    
        41.57430, -87.55432
    
    Point 4:
    
        41° 34' 29.3154"N 87° 33' 15.6234""W
    
        41.57481, -87.55434



## II.  Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A(I)) to the government pursuant to the following process:

1.  Google shall query location history data based on the Search Parameters specified in Attachment A(I).

2.  For each location point recorded within the Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List"). Google shall produce the Anonymized List to the government within fourteen days of the signing of this search warrant.

3.  The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4.  Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires and wishes to obtain identifying information.

### III. Information to be Seized

All information described above in Attachment A(I) that constitutes evidence of the **Subject Offenses** as follows:

1. Identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Accounts associated with any device that was present within at least two of the Target Locations described in Attachment A(I).

AO 93  (Rev. 11/13) Search and Seizure Warrant                    AUSA Vikas Didwania, (312) 353-8898

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

<u>**UNDER SEAL**</u>

In the Matter of the Search of:

Case Number:

Information Stored at Premises Controlled by Google
Inc., as further described in Attachment A

21 M137

## SEARCH AND SEIZURE WARRANT

To: William Fuentes and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California:

### See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### See Attachment A-III

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>March 19, 2021</u> in the daytime (6:00 a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: <u>March 5, 2021</u>     4'' pm

_____
*Judge's signature*

City and State: <u>Chicago, Illinois</u>

<u>SUNIL R. HARJANI, U.S. Magistrate Judge</u>
*Printed name and title*

FILED

MAR 05 2021

MAGISTRATE JUDGE
SUNIL R. HARJANI

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

## Return

| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### I.    Property to be Searched

This warrant is directed to Google LLC and applies to:

(1) location history data, sourced from methods including GPS, wi-fi, and Bluetooth, generated from devices and that reported a device location within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google accounts associated with the responsive location history data.

**Search Parameters 1**

- *Date*: December 7, 2020

- *Time Period (including time zone)*: 5:51 p.m. through 6:01 p.m. (CST).

- *Target Location 1*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

**Point 1:**

41°37'21.3"N  87°36'59.1"W

41.622576, -87.616425

**Point 2:**

41°37'19.9"N  87°36'59.1"W

41.622196, -87.616426

**Point 3:**

41°37'19.9"N  87°36'57.3"W

41.622191, -87.615907

**Point 4:**

41°37'21.3"N  87°36'57.3"W

41.622579, -87.615927



## Search Parameters 2

- *Date*: January 23, 2021

- *Time Period (including time zone)*: 5:25 p.m. to 5:37 p.m. (CST).

- *Target Location 2*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

Point 1:
    41°37'46.0"N  87°29'59.9"W
    41.629442, -87.499983
Point 2:
    41°37'44.6"N  87°29'59.9"W
    41.629068, -87.499963
Point 3:
    41°37'44.6"N  87°29'57.7"W
    41.629066, -87.499367
Point 4:
    41°37'45.8"N  87°29'57.9"W
    41.629379, -87.499405



## Search Parameters 3

- *Date*: January 23, 2021

- *Time Period (including time zone)*: 7:13 p.m. to 7:20 p.m. (CST).

- *Target Location 3*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

    Point 1:

    41°34'25.9"N 87°33'34.3"W

    41.573849, -87.559518

    Point 2:

    41°34'24.5"N 87°33'34.2"W

    41.573472, -87.559499

    Point 3:

    41°34'24.5"N 87°33'32.5"W

    41.573458, -87.559024

    Point 4:

    41°34'25.9"N 87°33'32.5"W

    41.573847, -87.559037



## Search Parameters 4

- *Date*: January 23, 2021

- *Time Period (including time zone)*: 7:20 p.m. to 7:30 p.m. (CST).

- *Target Location 4*: Geographical area identified by the following four latitude/longitude coordinates and decimal degrees (DD) connected by straight lines (both values are included for the convenience of the Service Provider):

    Point 1:

    　　　41° 34' 29.244"N 87° 33' 21.9234"W

    　　　41.57479, -87.55609

    Point 2:

    　　　41° 34' 27.4434"N 87° 33' 21.8874"W

    　　　41.57429, -87.55608

    Point 3:

    　　　41° 34' 27.48"N 87° 33' 15.552"W

    　　　41.57430, -87.55432

    Point 4:

    　　　41° 34' 29.3154"N 87° 33' 15.6234""W

    　　　41.57481, -87.55434



## II.    Information to be disclosed by Google

Google shall provide responsive data (as described in Attachment A(I)) to the government pursuant to the following process:

1.    Google shall query location history data based on the Search Parameters specified in Attachment A(I).

2.    For each location point recorded within the Search Parameters, Google shall produce to the government anonymized information specifying the corresponding unique device ID, timestamp, coordinates, display radius, and data source, if available (the "Anonymized List"). Google shall produce the Anonymized List to the government within fourteen days of the signing of this search warrant.

3.    The government shall review the Anonymized List in order to prioritize the devices about which it wishes to obtain identifying information.

4.    Google is required to disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Account associated with each device ID about which the government inquires and wishes to obtain identifying information.

31

### III. Information to be Seized

All information described above in Attachment A(I) that constitutes evidence of the **Subject Offenses** as follows:

1. Identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Accounts associated with any device that was present within at least two of the Target Locations described in Attachment A(I).